Joyce TSCHOHL as Executrix of the Estate of H. J. "Jim" Tschohl, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Joyce TSCHOHL as Executrix of the Estate of H. J. "Jim" Tschohl, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant.

Joyce TSCHOHL as Executrix of the Estate of H. J. "Jim" Tschohl, Plaintiff,

v.

BANKERS LIFE INSURANCE COMPANY, a corporation, Defendant.

Nos. 2–75–Civ–147, 2–75–Civ–246 and 2–75–Civ–247.

United States District Court,
D. Minnesota,
Second Division.

Sept. 13, 1976.

Marvin E. Lundquist, Mankato, Minn., for plaintiff.

A. J. Berndt and Lyle B. Overson, Mankato, Minn., for defendant Nationwide Mutual Ins. Co.

Roger A. Johnson, Johnson, Thompson, Klaverkamp & James, Minneapolis, Minn., for defendant Prudential Ins. Co. of America.

Randall C. Berkland, Mankato, Minn., for defendant Bankers Life Ins. Co.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The issue in this jury waived case brought by the widow-beneficiary of six accident insurance policies against three insurance companies is whether the insured's death at Hot Springs, Arkansas on May 7, 1974 was caused solely by accidental bodily injuries suffered by the insured in an automobile accident at Mankato, Minnesota on April 30, 1974. We find it was not.

Diversity jurisdiction is established. Trial was conducted August 23, 24, and 25, 1976. Fourteen witnesses testified. Exhibits and depositions were received. Briefs have been lodged.

Plaintiff claims death was solely caused by injuries suffered from the April 30 accident. Defendants claim the sole, or at least a contributing, cause of death was a long existing heart condition and the problems occasioned by treatment of it, particularly the use of anticoagulants to decrease the danger of blood clots.

The pertinent essential facts are not much in dispute.

In 1974 deceased was a 45 year-old lawyer actively practicing his profession in Mankato, Minnesota. In the spring of 1974 he was also very active in the politics of the Exchange Clubs and shortly prior to his death was strenuously campaigning for the office of president-elect of the Upper Midwest Exchange Club.

For several years he had rheumatic heart disease—mitral stenosis. He had had a mitro-commissurotomy performed in the spring of 1967 at the Mayo Clinic in Rochester, Minnesota. He suffered atrial fibrillation intermittently since the operation. From 1967 to September 16, 1968, the deceased took Warfarin to thin his blood. His physician, Dr. Alois Scheidel, put him on Warfarin again on April 12, 1974 when deceased complained of dizziness. Its purpose was to reduce the likelihood of blood clotting. He was also taking digital (lynoxin), 2 tablets a day.

On April 30, 1974 Mr. Tschohl was involved in a minor automobile accident near

a gas station in downtown Mankato. That day he left with his wife for a vacation trip to Arkansas. On the trip to and in Arkansas between April 30 and May 4 he suffered from headaches and some confusion. He was very tired and nauseated. He did not do any of the driving after Wednesday, May 1. On May 2 he started vomiting and suffered from diarrhea and the tiredness, nausea and headaches continued. On May 4 he suffered from the same complaints and the headaches became more severe. He was hospitalized at Little Rock. An emergency operation was performed on his brain to relieve a diagnosed blood clot. The operation was unsuccessful and he expired on May 7. The cause of death was certified by Dr. Lawrence T. Sanders who attended him as "Intra-cranial hemorrhage in left temporal lobe due to or as a consequence of anticoagulation with Warfarin."

The six insurance policies contain varying provisions governing payment for accidental death benefits but in essence condition payment upon a showing that death resulted solely as a result of accident. The pertinent provisions of each of these policies are set out in the appendix.

■ The law is established that plaintiff has the burden of establishing by the greater weight of the evidence that the deceased sustained accidental injuries which were the sole cause of death. *Kundiger v. Metropolitan L. Insurance Co.,* 218 Minn. 273, 15 N.W.2d 487 (1944) and where, as here, there is evidence showing the insured was suffering from a physical infirmity prior to the accident, the burden of establishing that such infirmity did not cause or contribute to insured's death is upon plaintiff. *Ryan v. Metropolitan L. Ins. Co.,* 206 Minn. 562, 289 N.W.2d 557 (1939).

■ I find that the plaintiff has not shown by a preponderance of the evidence that deceased suffered accidental bodily injuries on April 30, 1974 which caused his death and that even if it be assumed that such had been shown, plaintiff has not proved that such was the sole cause of death, independent of other causes, because the evidence reflects, and the medical experts support the claim of defendants, that deceased's death was, at least in part, caused by his heart trouble and the prescribed treatment for it, administration of the anticoagulant Warfarin.

The auto accident on April 30 was a minor one, referred to by several of the witnesses as a "fender bender." The accident was with a car driven by Joseph B. Butler of Mankato. He said he was driving less than 15 miles per hour and that Mr. Tschohl had driven only a yard or so from the curb when the cars collided. There was very minor damage done to each car. It cost $50 to repair the Butler car. The Tschohl car was not repaired until some 16 months later, and the estimated cost of repairs varied between approximately $130 and $230. There were no other witnesses to the accident. Butler said he observed Mr. Tschohl at the time of the collision and that Mr. Tschohl was not thrown about and did not hit his head. The two of them agreed that since the damage was so minor it was not necessary to call the police. Mr. Butler referred to it as a "very minor accident." Damage to the Tschohl car was to the turn signal light and scratches of paint for about two inches behind the light. Mr. Butler and Mr. Tschohl exchanged names and addresses and agreed that neither was hurt. Butler said that Mr. Tschohl seemed relaxed and was not excited. Tschohl did not tell his wife or anyone else about the accident and the fact that he had had it was not known by the family members until after deceased's death. Mr. Tschohl had no scratches, bruises or bumps on his body.

From the evidence it is inconceivable that this accident was the sole cause of the death of decedent. Raymond R. McHery of Williamsville, New York, an expert in automobile accidents and an employee of Calstrand Corporation, a research company owned in part by Cornell University, said that the severity of exposure was not sufficient to cause internal head injuries. He classed it as a "low severity accident." He said statistics reflect that head injuries ordinarily occur only in accidents when the speed is 30 miles per hour or above.

Dr. William Chalaren, a medical doctor specializing in neurology and psychiatry, testified that there was no relationship between the accident and the subsequent death of Mr. Tschohl. Dr. Edward L. Seljeskog, a neurological surgeon, said that the accident and subsequent death were unrelated.

But even if it is assumed that there was some relationship between the accident and death, it is clear from the evidence and the opinions of the medical doctors that the accident was not the *sole* cause of death. The atrial fibrillation and treatment of it by blood thinner was a contributing cause. This was the expressed opinion of Dr. Lawrence T. Sanders, an internist, from Hot Springs, Arkansas, who attended the deceased, and Dr. Surinder N. Cupta, a neurological surgeon, who performed the operation on Mr. Tschohl at Hot Springs, Arkansas.

Mr. Tschohl's own physician was Dr. Alois M. Scheidel, an internist from Mankato, Minnesota. He said in answer to a question by plaintiff's counsel that the accident was the *sole* cause of death, but on cross-examination by all counsel for defendants, it was elicited from him that Mr. Tschohl's physical condition, because of taking of Warfarin, was a factor which brought about his death.

I find and conclude from all of the evidence that plaintiff has not shown by the greater weight of the evidence that her husband's death was caused solely by accidental bodily injuries as required by the terms of each of the six insurance policies and that plaintiff is not entitled to recover.

These expressions shall constitute the court's findings of fact and conclusions of law and the Clerk is directed to enter judgment for defendants.

#### APPENDIX

Prudential policy number 28 089 160 obligates Prudential to pay an additional sum of $10,000.00 under the following circumstances:

"Except as provided under 'Conditions and Exceptions' below, the Company will pay the amount of the Accidental Means Death Benefit specified on the first page of this Policy upon receipt at the Home Office of due proof that the death of the Insured *occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means.*"

The policy also states requirements for the proof of accidental death within the policy definition:

"The aforesaid injuries must be evidenced by a *visible contusion or wound on the exterior of the body except in the case of drowning or of internal injuries revealed by an autopsy.*"

The policy sets forth the following relevant conditions and exceptions:

"No such Accidental Means Death Benefit shall be payable if payment is precluded by any one or more of the following CONDITIONS AND EXCEPTIONS:

(1) .    .   . .

(2) No such Accidental Means Death Benefit shall be payable if the injury or death results (a) directly or indirectly from *bodily or mental infirmity or disease,* even though drowning or an injury contributed to the death or was the proximate or precipitating cause thereof; (b) directly or indirectly from *medical* or surgical treatment;"

Prudential policy number 28 448 699 obligates Prudential to pay the additional sum of $20,000.00 under the following circumstances:

"Subject to the following conditions and exceptions, the company will pay the amount of the Accidental Death Benefit specified on the first page upon receipt at the Home Office of due proof that the insured's death resulted *directly and independently of all other causes, from accidental bodily injury.*"

The obligation to pay the benefit is made subject to the following exceptions:

"EXCEPTIONS: No Accidental Death Benefit shall be payable if the injury or

APPENDIX—Continued

death results (1) from suicide or any attempt thereat, whether the insured is sane or insane; or (2) directly or indirectly from bodily or mental infirmity or disease; or (3) from any infection, other than a pyogenic infection occurring through and at the time of an accidental cut or wound; of (4) *directly or indirectly from medical or surgical treatment*;"

The other two Prudential policies obligate Prudential to pay smaller accidental death benefits—$500.00 and $165.00—under stated circumstances that are identical for both policies:

"Upon due proof that the Insured . . has sustained *bodily injury, solely through external, violent and accidental means* . . . and resulting in the death of the Insured within ninety days from the date of such bodily injury . . ."

The Nationwide policy provides for the payment of $50,000 under the following terms:

"When Injury results in any of the following losses within 365 days after the date of the accident causing the Injury, the Company will pay . . . a benefit based on the applicable Principal Sum in accordance with the following schedule:

Loss of Life . . . . . The Principal Sum [$50,000.00] "Injury" is defined in that policy as follows:

"*Injury as used herein means a bodily injury which results, directly and indirectly of all other causes, from an accident sustained by an insured person while insured under the policy*;"

Benefits under the policy are subject to the following exclusions:

"No benefits are payable under the policy for any loss resulting from: (a) disease or bodily or mental infirmity or *medical or surgical treatment* thereof, *including diagnosis*;"

The Bankers' Life policy obligates that Defendant to pay an additional sum of $25,-000.00 under the following circumstances:

"ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS. If a Person, while insured under this Section of the Policy, *sustained an injury effected solely through external, violent and accidental means and as a result thereof, directly and independently of all other causes,* suffers a loss specified below within ninety days following the date of such injury, the Company, subject to all provisions of this Policy will pay

(a) the Principal Sum for loss of life;

. . . . .

LIMITATIONS APPLICABLE TO ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE. Benefits shall not be payable for any loss to which a contributing cause is

(a) . . .

(b) *disease, bodily or mental infirmity, or medical or surgical treatment thereof*;" [Emphasis added.]